STATE of Iowa, Appellant,

v.

Michael David ALLEN, Cross-Appellant.

No. 64796.

Supreme Court of Iowa.

April 15, 1981.

Thomas J. Miller, Atty. Gen., Julie F. Pottorff, Asst. Atty. Gen., and Eric Knoern-schild, Asst. Black Hawk County Atty., for appellant.

William L. Wegman, Black Hawk County Public Defender, for cross-appellant.

Considered by LeGRAND, P. J., and UHLENHOPP, McCORMICK, ALLBEE and SCHULTZ, JJ.

McCORMICK, Justice.

Defendant Michael David Allen waived jury trial and was tried to the court on a charge of sexual abuse in the third degree under section 709.4(4), The Code. The trial court acquitted him of that charge but found him guilty of indecent exposure under section 709.9. The acquittal was based on a finding that the language specifying the requisite relationship between the offender and victim in section 709.4(4) infringes due process under U.S.Const. amend. XIV on the ground of vagueness. The conviction was based on a finding that defendant was guilty of "the lesser included offense of indecent exposure." The State appeals from the judgment of acquittal, and defendant cross-appeals from the judgment of conviction. We reverse on both appeals.

I. *Jurisdiction of the State's appeal.* The right of appeal in criminal cases is governed by statute in Iowa. The State's right is delineated in section 814.5, The Code, and the defendant's right is delineated in section 814.6. The State may appeal as of right from:

(a) An order dismissing an indictment, information, or any count thereof.

(b) A judgment for the defendant on a motion to the indictment or the information.

(c) An order arresting judgment or granting a new trial.

§ 814.5(1). Discretionary review may be available from:

(a) An order dismissing an arrest or search warrant.

(b) An order suppressing or admitting evidence.

(c) An order granting or denying a change of venue.

(d) A final judgment or order raising a question of law important to the judiciary and the profession.

§ 814.5(2).

Section 814.5 is a departure from prior law. Previously the State could appeal only from final judgments but could do so as a matter of right. §§ 793.1, .2, The Code 1977. When such appeals were taken, however, the appeal would be decided only if this court in its discretion found that it involved a question of law whose determination would be beneficial to the bench and bar as a guide in the future. *State v. Whitehead,* 277 N.W.2d 887, 888 (Iowa 1979). Thus section 814.5(2)(d), which authorizes discretionary review of a final judgment "raising a question of law important to the judiciary and the profession," is functionally equivalent to the practice under prior law.

One difference exists, and that difference is important in the present case. Under prior law this court's discretion to entertain the appeal was exercised after the appeal was taken. In contrast, under the present statute the discretion is exercised in determining whether the appeal can be taken. The problem in this case is that the State did not petition for discretionary review. *See* § 814.4 ("Application for discretionary review is made by filing a written notice within ten days after judgment or order with the clerk of the district court wherein the judgment or order was entered."). Instead, subsequent to the ten-day period but within the time for regular appeal, the State filed a notice with the district court clerk purporting to perfect an appeal as of right. A question thus exists which we must answer on our own motion. It is whether this court has jurisdiction in view of the State's failure to obtain permission for the appeal.

If authority for the appeal depends on section 814.5(2)(d) governing appeals from final judgments, the question is answered on the face of the statute. Appeal in that situation is expressly made discretionary. Because the State did not seek and obtain discretionary review, the court did not ac-

quire jurisdiction of the appeal on that ground. Unless the State had a right to appeal under a ground in section 814.5(1), the appeal must be dismissed.

No doubt exists in this case that the judgment acquitting defendant of the sexual abuse charge was final within the meaning of section 814.5(2)(d). *See State v. Lekin,* 271 N.W.2d 697, 700 (Iowa 1978). However, some final judgments are appealable as of right under section 814.5(1). A dismissal order or judgment for defendant appealable as of right under section 814.5(1)(a) or (b) will often meet the finality test adopted for criminal cases in *Lekin.* It is true defendant raised his vagueness challenge at the conclusion of the evidence in a motion for acquittal. Nevertheless, his challenge to the facial validity of section 709.4(4) could have been raised by pretrial motion to dismiss the information. *See* Ia. R.Crim.P. 10(2). This was the procedure utilized in *State v. Sullivan,* 298 N.W.2d 267 (Iowa 1980). If that procedure had been used here, the State could appeal as of right under section 814.5(1)(a) ("An order dismissing an ... information...").

■ Moreover, that procedure should have been employed here. A motion for judgment of acquittal is a means for challenging the sufficiency of the evidence to sustain a conviction, not for attacking the facial validity of a statute. *See* Iowa R.Crim.P. 18(10)(a). We have held that "in order to preserve for review any alleged error in ruling on the constitutionality of a statute, the party challenging the statute must do so at the earliest available opportunity in the progress of the case." *State v. Ritchison,* 223 N.W.2d 207, 214 (Iowa 1974). Under *Ritchison,* a defendant does not preserve error when he waits until the conclusion of the evidence to mount an attack on the facial validity of a statute. Of course preservation of error is not a problem in this case because the trial court sustained the challenge. Nonetheless, the ground of challenge is one which ordinarily must be made by pretrial motion to dismiss. Defendant is excused in this case only because the trial court overlooked the untimeliness of the constitutional attack.

■ The issue is whether this fortuity deprives the court's ruling of its character as an order dismissing the information. Admittedly, as in *Sullivan,* the order would be so characterized, and thus appealable, if the constitutional issue were raised in a motion to dismiss. We have frequently said we will look to the substance of a motion and not its label. *See, e. g., Kagin's Numismatic Auctions, Inc. v. Criswell,* 284 N.W.2d 224, 226 (Iowa 1979). We do so here.

Consequently we treat the motion for acquittal as a motion to dismiss insofar as it assailed the facial validity of the statute. We hold that the resulting judgment on that ground was an order dismissing the information within the meaning of section 814.5(1)(a) as well as a final judgment of acquittal of the sexual abuse charge. Accordingly the State had a right to appeal and we have jurisdiction. We therefore reach the merits of the State's appeal.

II. *The Appeal.* The State alleged defendant had sexual intercourse with the fourteen-year-old half sister of his wife. Under section 709.4(4) "[a]ny sex act between persons who are not at the time cohabiting as husband and wife is sexual abuse in the third degree by a person when the ... other participant is fourteen or fifteen years of age and the person ... is related to the other participant by blood or affinity to the fourth degree...."

The evidence established that defendant's wife and the alleged victim had the same mother but a different father. In moving for acquittal, defendant alleged section 709.4(4) was unconstitutionally vague because of its failure to delineate what constitutes a relationship by "affinity to the fourth degree." The trial court agreed and therefore sustained the motion. Although the court did not expressly say so, we interpret its ruling as finding the statute unconstitutional on its face and as applied in this case. The finding of facial invalidity was based on alleged uncertainty concerning what relationships are embraced within the term "affinity to the fourth degree." The statute was found vague as applied because

of the absence of any standard concerning half-blood relationships.

Principles governing vagueness challenges are not in dispute. *See State v. Sullivan*, 298 N.W.2d 267, 270–71 (Iowa 1980); *State v. Aldrich*, 231 N.W.2d 890, 893–94 (Iowa 1974).

Although the legislature did not define affinity to the fourth degree in section 709.-4(4), it did provide a rule of construction in section 4.1(23) that "[d]egrees of consanguinity and affinity shall be computed according to the civil law." Defendant contends vagueness nevertheless exists because of indefiniteness concerning the meaning of the word "affinity," the method of computing degrees of relationships, and the applicability of the provision to half-blood situations.

■ The meaning of affinity is well established. It is the relationship which one spouse has because of the marriage to blood relatives of the other. " 'By the marriage, one party thereto holds by affinity the same relation to the kindred of the other that the latter holds by consanguinity....' " *Simcoke v. Grand Lodge of A. O. U. W.*, 84 Iowa 383, 388, 51 N.W. 8, 9 (1892).

■ The method of computing degrees of consanguinity and affinity according to the civil law is also well settled. In fact it is so well established that this court has applied it without elaborating on the mechanics of the computation. *See, e. g., Citizen's First National Bank v. Hoyt*, 297 N.W.2d 329, 333 (Iowa 1980); *Corbett v. Stergios*, 257 Iowa 1387, 1394, 137 N.W.2d 266, 270 (1965); *Jones v. Parsons*, 182 Iowa 1377, 1380, 166 N.W. 707, 707 (1918); *Chase v. Weston*, 75 Iowa 159, 161, 39 N.W. 246, 247 (1888); *Martindale v. Kendrick*, 4 Iowa (Greene) 307, 308 (1854). Detailed explanations, however, are found in cases from other jurisdictions and in the encyclopedias. *See, e. g., Owen v. State*, 255 Ala. 354, 355–56, 51 So.2d 541, 544 (1951); *State v. Thomas*, 351 Mo. 804, 810–11, 174 S.W.2d 337, 340 (1943); 23 Am.Jur.2d *Descent and Distribution* § 48 at 792–94 (1965); 26A C.J.S. *Descent and Distribution* § 22 at 562–63 (1956). As these authorities make clear, the degree of kinship is determined by counting upward from one of the persons in question to the nearest common ancestor, and then down to the other person, calling it one degree for each generation in the ascending as well as the descending line. Under this rule a woman's sister is related to her by consanguinity in the second degree. The sister is thus related to the woman's husband by affinity in the second degree.

■ These relationships are not changed merely by the fact that the blood relationship in a given case is by half blood. Section 709.4(4) is analogous to statutes proscribing incest. Historically, those statutes often prohibit sexual intercourse between persons related within degrees of consanguinity or affinity in which marriages are declared to be void. Annot., 72 A.L.R.2d 706 (1960). Even when marriage statutes use the terms "brother" and "sister" in defining void marriages, no distinction is made under the incest statutes between full and half-blood relationships. *Id.* at 707. Thus, if the requisite degree of consanguinity or affinity exists, no exception is made merely because half-blood relationships are involved. *See State v. Lamb*, 209 Iowa 132, 134–39, 227 N.W. 830, 831–33 (1929).

■ Persons related by half blood necessarily have a common ancestor, and the degree of their relationship is established through that ancestor. No requirement exists that they have a second ancestor in common. Thus, unless a statute provides otherwise, a woman's half sister is related to her by consanguinity in the second degree. The half sister is accordingly related to the woman's husband by affinity in the second degree. This was the relationship of defendant to the alleged victim in the present case.

■ Consequently, when construed, section 709.4(4) is sufficiently definite both on its face and as applied in this case. Under the agreed facts, the requisite relationship was shown. We hold that the trial court erred in striking the statute as unconstitutionally vague. We must now decide the effect of this error.

■ This court has consistently held under Iowa Const. art. I, § 12, that reprosecution after acquittal of a defendant is barred. In the present case the court's ruling acquitting defendant of sexual abuse but convicting him of indecent exposure had the force of a jury verdict. In applying the constitutional former jeopardy test this court has not distinguished between acquittals based on insufficiency of the evidence and those based on other grounds. *See, e. g., State v. De Marce,* 237 Iowa 648, 23 N.W.2d 441 (1946) (directed verdict based on mistaken assignment of burden of proof); *State v. Traas,* 230 Iowa 826, 298 N.W. 862 (1941) (directed verdict under erroneous sufficiency of evidence test); *State v. Dillard,* 225 Iowa 915, 281 N.W. 842 (1938) (directed verdict on erroneous interpretation of statute); *State v. Rorris,* 222 Iowa 1348, 271 N.W. 514 (1937) (directed verdict on jurisdictional ground). Under these holdings the acquittal bars reprosecution of defendant on the sexual abuse charge.

We do not overlook, however, the holding of the United States Supreme Court in *United States v. Scott,* 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978). In that case the Court held that reprosecution is not barred by the double jeopardy clause of U.S.Const. amend. V when a defendant obtains termination of a prosecution by acquittal or otherwise "without any submission to either judge or jury as to his guilt or innocence..." *Id.* at 101, 98 S.Ct. at 2199, 57 L.Ed.2d at 80. We need not decide in this case whether *Scott* will affect our interpretation of the double jeopardy provision in the Iowa constitution. This is because the issue of defendant's guilt or innocence was submitted to the court in this case. It was not only submitted, but defendant was actually convicted of what the court found to be a lesser included offense. Thus, even if we were to follow *Scott* under our constitution, the result would be the same in the present case. This result, however, highlights the importance to the State of having constitutional challenges to the facial validity of statutes resolved before the defendant is put in jeopardy. We hold that the defendant cannot again be put in jeopardy on the sexual abuse charge. Therefore, on the State's appeal we reverse but do not remand.

■ III. *The cross-appeal.* The trial court found defendant guilty of what it characterized as "the lesser included offense of indecent exposure." Defendant did not move for new trial or in arrest of judgment. However, when given his opportunity for allocution at sentencing, he objected through counsel that indecent exposure is not a lesser included offense of sexual abuse in the third degree under section 709.4(4). The court overruled the objection, and defendant now asserts this ruling was wrong.

The State concedes indecent exposure as defined in section 709.9 is not a lesser included offense of the sexual abuse charge involved in this case. Principles for making this determination were reviewed and reiterated recently in *State v. Sangster,* 299 N.W.2d 661, 663–64 (Iowa 1980). As the State acknowledges, sexual abuse under section 709.4(4) does not necessarily include the elements of indecent exposure. It would be legally possible to commit the sexual abuse offense without having committed the indecent exposure offense.

Nevertheless the State contends defendant waived his objection by making it too late. The State reasons that he could have raised the issue in a motion for new trial or motion in arrest of judgment. If he had done so, he would have been required to make his motion not later than five days before the sentencing date. *See* Iowa R.Crim.P. 23(2)(a), 23(3)(b). He did not file such motions. The State argues he should not be permitted to circumvent the time limitations applicable to those motions by urging his objection for the first time at sentencing.

The main problem with the State's position is that Iowa R.Crim.P. 22(3)(b) expressly permits a defendant to "show for cause against the judgment ... any sufficient ground for a new trial, or in arrest of judgment." It thus appears defendant was

authorized to make his objection at the time he did. Although it would have been better practice for him to raise the issue by post-trial motion, his objection at sentencing was sufficient to preserve the error which the State acknowledges the trial court made.

We conclude that the court erred inholding indecent exposure to be a lesser included offense of sexual abuse under section 709.4(4). Therefore we reverse his conviction and sentence for that offense. Because no charge remains against defendant in this case, we do not remand.

Costs are assessed one-half to each party.

REVERSED ON BOTH APPEALS.

All Justices concur except UHLENHOPP, J., who dissents in part and concurs in part.

UHLENHOPP, Justice (dissenting in part, concurring in part).

I think subsections 814.5(1)(a) and (b) were intended to apply to pretrial orders and subsection 814.5(1)(c) was intended to apply after a verdict of conviction (by jury or by judge if a jury is waived), thus avoiding double jeopardy involvement. We do not *actually* have any of those situations here. The State did not obtain leave to appeal, and I would therefore dismiss its appeal.

I concur in reversal on the cross appeal.